IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Shirley R. Greene,<br><br>                Plaintiff,<br><br>vs.<br><br>Jo Anne B. Barnhart,<br>Commissioner of Social Security,<br><br>                Defendant. | Civil Action No. 6:04-2282-GRA-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits on August 20, 1999, alleging that she became unable to work on September 29, 1991. The application was denied initially and on reconsideration by the Social Security Administration. On September 27, 2000, the plaintiff requested a hearing. The administrative law judge, before

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

whom the plaintiff, her husband and her attorney appeared, considered the case *de novo*, and on September 20, 2001, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on November 30, 2001. The plaintiff then filed this action for judicial review.

On February 11, 2003, United States Magistrate Judge Joseph R. McCrorey dated February 11, 2003, recommended that this case be remanded to the Commissioner for further proceedings. By order filed March 4, 2003, United States District Judge Margaret B. Seymour adopted Judge McCrorey's recommendation and remanded the case. A supplemental hearing was held on October 21, 2003, at which the plaintiff, her attorney, and a vocational expert appeared. On December 23, 2003, the ALJ again found that the plaintiff was not entitled to benefits. The Appeals Council adopted the ALJ's decision on May 14, 2004. The plaintiff then filed this action.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant met the disability insured status requirements of the Act on September 20, 1991, the alleged date of disability onset, and continued to meet them through December 31, 1996.
>
> (2) The claimant has not engaged in substantial gainful activity since her alleged onset date.
>
> (3) The medical evidence establishes that the claimant has "severe" Crohn's disease, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.
>
> (4) For reasons explained in the body of this decision, the testimony regarding the severity of the claimant's impairments and resulting functional limitations was not persuasive.
>
> (5) During the period in question, the claimant retained the residual functional capacity to perform "light" and "sedentary"

2

work with the following exertional and non-exertional limitations: 1) simple, routine, repetitive tasks of a low stress, non-production oriented nature, 2) no frequent or repetitive bending, stooping, squatting, or lifting, 3) no "skilled" work, and 4) proximity to bathroom facilities, such as would be found in an office setting.

(6) The claimant is unable to perform her past relevant work.

(7) The claimant was a "younger individual" during the period in question. She has a "limited" education.

(8) Based on an exertional capacity for "light" work, and the claimant's age, education, and work experience, section 404.1569 and Rule 202.18, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would be direct a conclusion of "not disabled."

(9) Even if the claimant's non-exertional limitations do not allow her to perform the full range of "light" work, using the above cited rule in conjunction with the credible testimony of the vocational expert, warrants a finding that there are a significant number of jobs in the national economy which the claimant could perform. Examples of such jobs are office helper and mail clerk.

(10) The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date last insured.

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981). In addition, a claimant has the burden of establishing that his disability existed prior to the date he was last insured under the regulations. *See Casey v. Sullivan*, 3 F.3d 75 (4th Cir. 1993); *Stawls v. Califano*, 596 F.2d 1209 (4th Cir. 1979).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the

national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff alleges that the ALJ erred in finding that there was not substantial evidence to establish that she was disabled as of the date she was last insured ("DLI"), December 31, 1996. Specifically, the plaintiff alleges that the ALJ erred (1) in his credibility analysis of the plaintiff's testimony regarding her pain and other symptoms; (2) in

5

discounting the opinion of the treating physician; (3) in finding that the plaintiff did not meet the Listing requirement for Crohn's disease; (4) in making an "imprecise RFC finding"; and (5) in failing to even acknowledge SSR 00-4p.

This case was once previously remanded by the United States District Court on March 4, 2003, by order of District Judge Margaret Seymour, based upon the report and recommendation of United States Magistrate Judge Joseph R. McCrorey dated February 11, 2003. After the remand, the ALJ again denied benefits to the plaintiff.

The plaintiff, 52 years old on the date of the remand hearing, suffers from debilitating Crohn's disease (Crohn's). She completed the tenth grade and her relevant work history was as a textile worker. She has not worked since September 20, 1991, and the date she was last insured was December 31, 1996.[2] The ALJ found that the Crohn's was a severe impairment but that prior to the date she was last insured, the plaintiff retained the residual functional capacity to perform unskilled light and sedentary work with certain limitations.

## *Plaintiff's Credibility*

On February 11, 2003, Judge Seymour adopted the report and recommendation of Magistrate Judge McCrorey and remanded this case because the ALJ failed to properly assess the claimant's complaints of pain and other symptoms. In his recommendation, Judge McCrorey stated with regard to the ALJ's previous decision:

> The ALJ's decision does not address whether there is objective evidence that plaintiff's Crohn's disease could reasonably be expected to produce the pain alleged by the plaintiff. Plaintiff has presented medical evidence that should have been considered by the ALJ in making that determination. For example, the plaintiff's treating physician, Dr. Robert L. Sigmon, Jr., prescribed pain medication for plaintiff's upper abdominal

---

[2] It appears from the record that the plaintiff has been receiving supplemental security income benefits (SSI) since 1995.

6

>     pain on January 6, 1995. Dr. Sigmon noted that plaintiff
>     continued to have abdominal pain, relieved only with Darvocet,
>     on January 19, 1995. On October 18, 1995, plaintiff was
>     hospitalized. Dr. Kenneth David Burgess noted that on
>     examination, plaintiff has 'fairly significant right lower quadrant
>     pain,' and he prescribed Demerol for pain. Dr. Richard
>     Eisenman, a gastroenterologist, noted that plaintiff had
>     diarrhea, rectal bleeding, and abdominal pain in August 1996.
>     On October 24, 1996, Dr. Eisenman noted that plaintiff had
>     rectal bleeding with perianal pain. This action should be
>     remanded to the Commissioner to properly consider plaintiff's
>     complaints of pain under controlling law. [citations omitted]

(Tr. 278-279.)

A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). In *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996), the Fourth Circuit Court of Appeals set out a two-step analysis for evaluating subjective complaints of pain. First, there must be objective evidence of the presence of an underlying impairment that reasonably could be expected to cause the subjective complaints of the severity and persistence alleged. After this threshold is met, consideration must be given to the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints reported. *Id.* at 594-596.

In his decision following remand, the ALJ again did not specifically address whether there was objective evidence that the plaintiff's Crohn's disease could reasonably be expected to produce the pain alleged by the plaintiff. Instead, the ALJ found that the plaintiff's "testimony as to the intensity, persistence, and limiting effects of her pain and other symptoms during the period in question is not persuasive in view of the inconsistencies in the record." The ALJ then picked out portions of the medical records for the period in question and made conclusions such as the plaintiff "did not report constant pain but had only intermittent flare-up of symptoms" and that on occasion she reported to

7

her doctors that she was doing better and that her medications were helping. The ALJ never reached the threshold question of whether the plaintiff's condition could reasonably be expected to produce the pain and other symptoms she described.

Moreover, substantial evidence does not support the credibility determination of the ALJ. The ALJ did not specify in detail the reasons he found that the plaintiff was not credible and that her limitations were not as great as she testified. It is important to note that these limitations do not include only pain, but also frequent bowel movements and the need to use the bathroom on a frequent, urgent and unscheduled basis. The plaintiff testified that by the end of 1996, she was having anywhere from four to five bowel movements a day, and sometimes as many as eight in a day. This testimony is consistent with the report of Dr. Robert Sigmon, which showed that on January 10, 1995, the plaintiff indicated to him that she was having four to five loose bowel movements daily. The medical records also show that the plaintiff had several flare-ups in 1995 and 1996 during which she experienced significant pain and required hospitalization on occasion.

The symptoms and limitations which the plaintiff testified she experiences are reasonably consistent with the medical evidence and the chronic condition from which she suffers. Accordingly, the ALJ erred in finding her testimony as to her limitations to be not credible, as the testimony is not inconsistent with the medical and other evidence.

### *Treating Physician Opinion*

The plaintiff also contends that the ALJ erred in violating the treating physician rule. The ALJ considered the opinion of Dr. Scott Richardson, the plaintiff's treating physician, but gave it little weight as to the retrospective nature of the plaintiff's condition.

Dr. Richardson, a board-certified gastroenterologist, first started treating the plaintiff in January 2003. In a letter dated August 13, 2003, Dr. Richardson stated that he

had reviewed the plaintiff's medical records dating back to 1995-1996. Dr. Richardson then stated:

> Upon review of her medical records from those dates, she was seen by Dr. Richard L. Sigmon as well as by Dr. Kenneth Burgess. I believe they are at Gaston Memorial Hospital in Gastonia, N.C. She had additionally been seen by Dr. Richard Eisman [sic], another gastroenterologist at Little River Medical Center as well as at Conway Hospital in August and October 1996. During those times she appeared to have significantly refractory Crohn's disease. Her Crohn's essentially is focused around persistent gastrointestinal bleeding as well as significant abdominal pain. Evaluations at the time demonstrated active colitis as well as perianal disease including possible fistula. She was treated with Azulfidine and steroids (presume Prednisone) with little significant relief. She additionally required significant narcotics including Darvocet and others. It appears that Mrs. Greene did indeed have significant trouble with ongoing active steroid refractory colitis during those times. Dates of her treatment are from January 6, 1995 through December 31, 1996. I would refer you to the medical record from the above physicians during those times.
>
> Based upon my review of the literature, it would appear that the patient would meet the criteria for Disability based on chronic ongoing pain and bleeding from refractory colitis. She appeared unable to work due to the excessive pain. She dis require persistent narcotics for treatment and these apparently did not completely relieve the pain.
>
> Therefore, based upon my review of this documentation, I would encourage you to find that Mrs. Greene was indeed disabled prior to December 1996.

(Tr. 308-309.)

Normally, the opinion of a treating physician "is entitled to great weight for it reflects an expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983). In *Craig v. Chater*, however, the Fourth Circuit Court of Appeals stated that "precedent does not require that a treating physician's testimony 'be given controlling weight'. ... [I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other

9

substantial evidence, it should be accorded significantly less weight." 76 F.3d 585, 590 (4th Cir. 1996). If not entitled to controlling weight, the value of the opinion must be weighed, and the ALJ must consider: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of the treating physician. 20 C.F.R. §404.1527(d)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. Social Security Ruling 96-2p.

Clearly, a court may consider retrospective opinions of a treating physician. *Wilkins v. Secretary, Dep't of Health and Human Serv.*, 953 F.2d 93 (4th Cir. 1991). As with any treating physician opinion, it is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §404.1527(d)(2). If the ALJ finds that it is not entitled to controlling weight, he must consider the weight to be given to the physician's opinion by applying the five factors identified in the regulation.

In this case, the ALJ appears to have rejected the opinion of Dr. Richardson primarily because the treating physician did not treat the plaintiff before her DLI. He also found that Dr. Richardson's summary of his review of the medical records from the period in question was inconsistent with the actual treatment notes. The ALJ engaged in no discussion of the factors listed in the regulation. In his ruling, the ALJ essentially ignored the medical opinions of the plaintiff's treating physicians, relying instead upon snapshots of the plaintiff's medical history when she was feeling well. Additionally, the ALJ ignored the "chronic" nature of the plaintiff's condition, which logically and practically means that she might experience good days and bad days and that the flare-ups of her Crohn's might vary

in intensity and regularity. It is clear, however, that she suffers on a regular basis from the effects of this disease, including pain and frequent diarrhea and urgent bowel movements. The attempts to show inconsistencies defy normal logic. A review of the records clearly shows that the plaintiff had pain and other symptoms on a regular basis as far back as early 1995, well before the plaintiff's DLI of December 31, 1996.

On January 6, 1995, the plaintiff's treating physician prescribed pain medication for the plaintiff, who was experiencing upper abdominal pain. On January 10, 1995, Dr. Sigmon reported that "she continues to have right-sided abdominal pain relieved only with the Darvocet." He also noted that the plaintiff "appears a little distressed because of these persistent symptoms" (Tr. 109).

The plaintiff was hospitalized on October 18, 1995, by Dr. Kenneth Burgess. Dr. Burgess noted that on a scale of 1 to 10, with 10 being the worst pain she had ever felt, the plaintiff reported that her pain was a 10. Dr. Burgess noted that the plaintiff was nauseated and his examination showed that "she [had] fairly significant right lower quadrant pain." He prescribed Demerol and Phenergan for pain, nausea and vomiting (Tr. 115-116).[3]

After moving to Conway in 1996, the plaintiff began seeing Dr. Richard Eisenman, a gastroenterologist. His notes indicate that the plaintiff had at least a 10-year history of Crohn's disease. Dr. Eisenman further noted that the plaintiff had been treated with steroids and Azulfidine for 50 percent of the time in the last 10 years and that she had recently been put back on medication when she had been seen at the Little River Medical Center complaining of perianal pain. Dr. Eisenman also noted that the plaintiff's pain is "complicated by symptoms of dysphagia which are intermittent" (Tr. 201).

---

[3]Further illustrating the chronic nature of Crohn's disease, Dr. Burgess noted that the plaintiff had a history of Crohn's disease and had been diagnosed two years earlier when she had a "flare up." He noted that she had experienced a flare up in June 1995 as well.

11

On October 24, 1996, the plaintiff was treated in the emergency room for rectal pain and bleeding. Dr. Eisenman concluded that it was unclear as to whether the rectal bleeding was related to Crohn's complication or to another overlooked perianal problem. His final impression, however, was "Crohn's disease of the large and small intestine plus perianal Crohn's disease, stable" (Tr. 202).

In this case, the opinion of the plaintiff's treating physician, a board-certified gastroenterologist, should be accorded controlling weight. His opinion is supported by the evaluations, physical examinations and treatment of the plaintiff over several years. There is little clinical evidence to the contrary. Morever, as a specialist and the plaintiff's treating doctor, Dr. Richardson could properly base his opinion not only on the treatment notes from prior physicians, but also on his general knowledge of the plaintiff's condition and on his medical expertise.

***Listing 5.07***

The plaintiff also contends that the ALJ erred in finding that her condition did not meet the requirements of Listing 5.07.[4] A claimant who has a severe impairment which meets or equals a listing, and who is not currently engaged in substantial gainful activity, is entitled to disability benefits. *Durham v. Apfel*, 34 F.Supp.2d 1371 (N.D.Ga. 1999); *see also Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984)(noting that a claimant's disability is established if his nonexertional condition is a listed impairment in the regulations). The question becomes whether or not there is substantial evidence to support the finding of the ALJ that the plaintiff's impairment did not constitute a listed impairment.

The burden is on the plaintiff to prove that her condition meets the requirements of the Listings. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). There

---

[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

is no statement from a physician in the record indicating that the plaintiff's condition met the requirements of Listing 5.07A. Two state agency physicians, however, found that the plaintiff did not satisfy the requirements of any listed impairment (Tr. 45; 48). Accordingly, it was not error for the ALJ to find that the plaintiff did not meet the Listing requirements.

### *Residual Functional Capacity Determination/SSR 00-4p*

The plaintiff further contends that the ALJ erred in "setting out an imprecise RFC finding which cannot fulfill the ALJ's burden of proof at Step 5" and in "failing even to acknowledge SSR 00-4p." In light of this court's recommendation that the decision of the ALJ be reversed on other grounds and benefits awarded, it is unnecessary to reach this issue. However, in the event the district court does not adopt this recommendation, this court will briefly address this issue.

In making his RFC determination, the ALJ made two findings, that the plaintiff would require a "low stress" environment" and proximity to bathroom facilities. The RFC analysis did not define "low stress." Under SSR 96-8p, with regard to nonexertional limitations, such as mental limitations, the ALJ is required to consider the following:

> Work-related mental activities generally required by competitive remunerative work include the ability to understand, carry out and remember instructions; use judgment in making work-related decisions; and deal with changes in a routine work setting.

As pointed out by the Commissioner, the plaintiff did not allege disability based on a mental impairment. Therefore, SSR 96-8p does not specifically apply to this case. Moreover, the inclusion of "low stress" in the hypothetical and in his RFC finding merely reflected another way of describing unskilled and semiskilled jobs which were simple, routine, repetitive and non-production in nature. To parse the phrase "low stress" in a case like this, requiring the

ALJ to make specific findings with regard to mental limitations, is unnecessary. Likewise, the ALJ was not required to specify proximity to bathroom facilities.

## CONCLUSION AND RECOMMENDATION

The record does not contain substantial evidence supporting the Commissioner's decision denying the plaintiff disability benefits. The plaintiff here has not had a resolution to her claim for over six years. Reopening the record for more evidence would serve no purpose. *See Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974). Accordingly, this court recommends that the Commissioner's decision be reversed and that the case be remanded to the Commissioner to take appropriate action for the awarding of benefits.

_____
WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

August 2, 2005

Greenville, South Carolina